**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

JEFFREY CORPORAL,

Plaintiff,

v.

WARDEN WEBER,
ASSISTANT WARDEN BUTLER,
SECURITY CHIEF LLEWELLYN,
COMMISSIONER HILL,
SECRETARY GREEN and
ATTORNEY GENERAL FROSH,

Defendants.

Civil Action No. TDC-21-1539

## MEMORANDUM OPINION

Jeffrey Corporal, an inmate confined at the Western Correctional Institution ("WCI") in Cumberland, Maryland, has filed this civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that he was denied access to reading material in violation of his rights under the First and Fourteenth Amendments to the United States Constitution. Pending before the Court are Corporal's Motion for a Preliminary Injunction; a Motion to Dismiss the Amended Complaint, or in the Alternative, for Summary Judgment, filed by Defendants Warden Weber, Assistant Warden Butler, Security Chief Llewellyn, Commissioner Hill, and Secretary Green (collectively, "the Correctional Defendants"); and Corporal's Motion for Summary Judgment. Service of the Complaint on Defendant Attorney General Frosh was not accepted. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Correctional Defendants' Motion will be GRANTED, all claims

against Defendant Attorney General Frosh will be dismissed, and Corporal's Motions will be DENIED.

## BACKGROUND

In his Amended Complaint, Corporal alleges that in January 2021, he ordered two paperback books and four hardcover books from the Edward Hamilton Book Company. On February 9, 2021, these books arrived at WCI while Corporal was in administrative segregation. Corporal was told that the hardcover books were not provided to him based on a prison policy which prohibits inmates in segregation from possessing hardcover books for security reasons. Although not specifically barred by prison policy, prison officials also withheld his paperback books. Corporal learned of the fact that the books had been withheld for the first time on April 14, 2021. Corporal asserts that preventing him from receiving his books while in administrative segregation violated his First Amendment rights. He further argues that Defendants violated his due process rights under the Fourteenth Amendment by failing to provide a "post-censorship remedy" for the deprivation, including a notice of the confiscation of his books and an opportunity to challenge it. Am. Compl. at 5, ECF No. 18.

## DISCUSSION

### I. Motion to Dismiss the Amended Complaint

In their Motion, the Correctional Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56 on the grounds that (1) Corporal's claims are barred by the doctrines of *res judicata* and collateral estoppel; (2) Corporal's claims should be dismissed for failure to exhaust administrative remedies; (3) Corporal has failed to state a claim upon which relief may be granted; and (4) they are entitled to qualified immunity.

**A. Legal Standards**

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, a self-represented plaintiff must still carry "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of the Correctional Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Because Corporal has not filed such a declaration and in fact responded to the Correctional Defendants' Motion by filing a Motion for Summary Judgment, the Court may construe the Correctional Defendants' Motion as seeking summary judgment as to the arguments requiring consideration of the submitted exhibits.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with "all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

Finally, in resolving the Motions, the Court may take judicial notice of the filings and court rulings in *Corporal v. Pennington*, No. DKC-20-3357 ("*Corporal I*"), a related case filed by Corporal in this Court on November 1, 2020, for purposes of assessing whether *res judicata* or

collateral estoppel precludes consideration of Corporal's claims in the present case. Fed. R. Evid. 201(b)(1)(2); *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (stating that a "court may take judicial notice of facts from a prior judicial proceeding" in evaluating a *res judicata* claim as long as there is no dispute as to the "factual accuracy of the record of [the] previous suit").

**B. Official Capacity Claims**

Corporal's Amended Complaint states that he is "suing all defendants in their personal and official capacities." Am. Compl. at 2. However, claims against state officials in their official capacities are effectively claims against the state and are thus not proper claims against a "person," as required for a § 1983 claim. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Corporal's official capacity claims against all Defendants will therefore be dismissed.

**C. Exhaustion of Administrative Remedies**

The Correctional Defendants also argue that this case should be dismissed because Corporal failed to exhaust administrative remedies before filing his Complaint in this Court. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2018). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that "[a]n inmate must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," when the procedure is "so opaque that it becomes, practically speaking, incapable of use," or when "prison administrators thwart inmates from taking advantage of [filing grievances] through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

In Maryland prisons, for the type of grievance asserted by Corporal, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2021). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. *Id.* § 12.02.28.05(D)(1) (requiring filing with the "managing official"); *id.* § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); *id.* § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. *Id.* § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code Ann., Corr. Servs. §§ 10-206, 10-210 (LexisNexis 2017); Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Here, Corporal failed to exhaust administrative remedies. The record reflects that Corporal filed multiple ARPs relating to the withholding of the books that arrived in February 2021. For example, he filed ARP No. WCI-0470-21 on March 31, 2021 which was dismissed by the ARP Coordinator on April 1, 2021 for procedural reasons because more information was needed to investigate the request. ARP No. WCI-0492-21, filed on April 5, 2021, complained that his books had been returned to the supplier; the April 20, 2021 response stated that after investigation it was determined that his books remained in the institution. On April 6, 2021, Corporal filed another ARP, also assigned No. WCI-0470-21, which was dismissed by the ARP Coordinator on April 7, 2021 for procedural reasons as untimely filed. He then filed ARP No. WCI-0567-21 on April 14, 2021, which was dismissed on April 15, 2021 because it was repetitive of the prior ARPs. The Correctional Defendants assert that Corporal failed to appeal his ARPs up to the IGO and specifically note that Corporal's own Amended Complaint admits that he failed to do so. In opposing the Motion, Corporal does not dispute the fact that he failed to appeal to the IGO. Rather, he asserts only that he was not provided a receipt for his April 14, 2021 ARP that provided the assigned ARP number or a response from the ARP Coordinator or the Warden, so he was unable to exhaust administrative remedies. Corporal did, however, retain a copy of that ARP, which he submitted with his Complaint in this case.

Corporal's claim, even if true, does not excuse his failure to exhaust administrative remedies because it does not establish any of the grounds identified in *Ross* for finding that an administrative remedy is unavailable. He has neither alleged nor demonstrated that WCI personnel are "unable or consistently unwilling to provide any relief to aggrieved inmates," or that the ARP procedure at WCI is "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 578 U.S. at 643-44. To the contrary, the record reflects that Corporal has filed 80 ARPs in

approximately 13 years at WCI and generally received timely responses with either procedural or substantive grounds for the determination. Where Corporal has submitted an opinion from an unrelated appeal to the IGO, the Court concludes that Corporal was familiar with and had the ability to use the ARP appeal process. Though Corporal claims he was unable to appeal his April 14, 2021 ARP because he did not receive responses, the standard Appeal of Administrative Remedy Response form includes as a possible reason for an appeal a scenario that there was "No Response from Warden Managing Official/Designee." DOC Form 185.0002fR, Defs. Mot. Summ. J. Ex. C-3, ECF No. 19-7. Finally, Corporal's claim that he did not receive a receipt for his ARP does not mean that he could not actually submit an appeal, particularly where the record shows that his ARPs did, in fact, receive assigned numbers and were logged in the prison's ARP system, copies of several of the relevant ARPs and their responses were kept on file, and Corporal had retained a copy of at least one of the ARPs. On these facts, the Court does not find that Defendants used "machination, misrepresentation, or intimidation" in order to thwart Corporal's use of the ARP process. *Ross*, 578 U.S. at 643-44. Under these circumstances, the Court finds that Corporal failed to exhaust administrative remedies and that his claims therefore must be dismissed.

**D. Collateral Estoppel**

The Correctional Defendants also argue that the instant action is barred by the doctrines of *res judicata* and collateral estoppel because Corporal previously raised and litigated these same claims or issues in *Corporal I*. The doctrine of collateral estoppel, or issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to [a] prior judgment" when the party against whom the doctrine is to be applied had "a full and fair opportunity to litigate," even if the issue "recurs in the context of a

different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). For the doctrine to apply, (1) the issue to be precluded must be identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) the determination of the issue must have been a critical and necessary part of the earlier decision; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is to be applied must have had a "full and fair opportunity to litigate the issue" in the prior case. *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998).

Prior to filing the present action on June 21, 2021, Corporal had previously filed and litigated *Corporal I*, an almost identical case filed on November 17, 2020. In his complaint in *Corporal I*, as amended on March 11, 2021, Corporal alleged that in September 2020, while he was in administrative segregation, a correctional officer informed him that three paperback books and a hardcover book that had been ordered for him by a relative had arrived, but then told him that he would not be permitted to keep the hardcover book because of a prison policy barring prisoners on administrative segregation from having hardcover books in their cells. The correctional officer also informed him that he would not receive the paperback books unless he agreed to have the hardcover book destroyed or returned to the seller. When Corporal did not agree, he received none of the books. In *Corporal I*, Corporal alleged various claims, including that the deprivation of his books while on administrative segregation violated his rights under the First Amendment, and that the failure to provide procedural safeguards against the "censorship of his books" violated his right to due process under the Fourteenth Amendment. No. DKC-20-3357 Compl. ¶ 11 (ECF No. 1). The defendants in *Corporal I* included Butler, Weber, Hill, and Green, all of whom are Defendants in the present case.

On July 30, 2021, the court (Chasanow, J.) granted a Motion to Dismiss or for Summary Judgment in *Corporal I. See Corporal v. Pennington*, No. DKC-20-3357, 2021 WL 3269084, at * 1 (July 30, 2021). Among other grounds, the court held that the correctional officer defendant was entitled to qualified immunity because the officer had not violated clearly established rights under the First or Fourteenth Amendments. *Id.* at *6. Citing *Beard v. Banks*, 548 U.S. 521 (2006), the court noted that the Supreme Court has upheld restrictions on the provision of materials such as newspapers and magazines to inmates on administrative or disciplinary segregation, the reasons for which included providing a means to incentivize better behavior by such inmates and the need to diminish the amount of material that could be used to start a fire. *Corporal I*, 2021 WL 3269084, at *6; *see Beard*, 548 U.S. at 529-30. Where the policy applied in *Corporal I* was similarly based in part on a need to limit the amount of material that could be used to start a fire or to clog a toilet, the court held that the failure to deliver books to Corporal while he was on administrative segregation did not violate a clearly established right under the First Amendment. *Corporal I*, 2021 WL 3269084, at *6. Similarly, the court found that the correctional officer defendant was entitled to qualified immunity on Corporal's due process claim because there was "no precedent condemning the lack of procedural due process" in this context. *Id.* Finally, the court concluded that Corporal's claim for injunctive relief failed because Corporal lacked standing to seek the injunction requested, which would bar Defendants from withholding books from all inmates at WCI, *id.* at *6, and because the claim was moot because he was no longer in administrative segregation, such that he was seeking an improper advisory opinion. *Id.* at *7.

The present case is virtually identical to *Corporal I* except that it is based on a different incident of withholding books that occurred only four months after the incident underlying *Corporal I.* Based on the court's resolution of the issue of whether there was clearly established

law on the alleged First and Fourteenth Amendment violations in *Corporal I*, Corporal's claims in the present case are barred by collateral estoppel. In the present case, Corporal claims that the Correctional Defendants violated his First and Fourteenth Amendment rights by withholding books, failing to provide a post-deprivation remedy, and failing to train or supervise staff so as to prevent these alleged constitutional violations. The Correctional Defendants have asserted that they are all entitled to qualified immunity because their conduct did not violate clearly established law. Because the underlying constitutional bases for Corporal's claims here and in *Corporal I* are the same, a critical issue relevant to the resolution of the qualified immunity defense here is the same as the issue litigated in *Corporal I*, namely whether there was clearly established law under the First and Fourteenth Amendments that was violated by the refusal to allow Corporal to receive his books while he was in administrative segregation. As discussed above, the court in *Corporal I* specifically decided that no such clearly established law existed, and that determination was a critical and necessary part of the dismissal of the First and Fourteenth Amendment claims in that case. *See Corporal I*, 2021 WL 3269084, at *6-7. The parties do not present, and the Court is not aware of, any intervening law arising between the September 2020 incident in *Corporal I* and the February 2021 incident in this case that would warrant a different resolution of this issue now. The dismissal in *Corporal I* was final and on the merits. Finally, where Corporal was a party to *Corporal I* and argued for an injunction against the prison's policy, the defendants in *Corporal I* asserted the defense of qualified immunity in a motion to dismiss, and Corporal filed a memorandum in opposition to the motion, the party against whom estoppel is to be applied had a "full and fair opportunity to litigate the issue." *See Sedlack*, 134 F.3d at 224. All of the elements of collateral estoppel are therefore satisfied.

In the present case, the alleged constitutional violations by Defendants, whether based on the actual withholding of his books, the failure to train or supervise prison staff not to withhold books, or the failure to change the policy restricting books from inmates in segregation, are all predicated on the claim that the prison's practices violated First and Fourteenth Amendment rights relating to the receipt of books by inmates. Because the issue of whether those rights were clearly established at the time of the incidents in question was decided against Corporal, that issue cannot be relitigated here. Yet absent a finding that those rights were clearly established, the Correctional Defendants are entitled to qualified immunity against Corporal's claims.

As for the availability of injunctive relief, that issue was litigated in *Corporal I*, Corporal had a full opportunity to litigate that question, the Court ruled that no such relief was available based on lack of standing and mootness, and those rulings were critical and necessary to the final judgment on this issue. Where the record provides no basis to conclude that any of the underlying facts have changed between *Corporal I* and the present case, collateral estoppel bars relitigation of those determinations and thus bars the issuance of injunctive relief.

Accordingly, where collateral estoppel bars relitigation of dispositive issues in this case that were decided against Corporal, his claims against the Correctional Defendants necessarily fail. The Court will therefore grant the Correctional Defendants' Motion.

## III. Attorney General Frosh

Attorney General Frosh was not served with the Complaint. However, this Court is required to dismiss any complaint filed by a prisoner if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted," or if it "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a), (b) (2018).

Here, Corporal's allegations against Frosh are that he appeared on behalf of the defendants in *Corporal I*, which led him to be "aware of the irregularities" of WCI prison staff withholding books and not providing post-deprivation remedies, that he took "no legal action whatsoever to eliminate the foregoing irregularities," and that he failed to train and supervise prison staff but instead "approved, encouraged, or ignored" their acts. Am. Compl. at 8-9. Corporal's allegations do not support a claim against Frosh because personal liability under § 1983 requires a showing that the "official charged acted personally in the deprivation of the plaintiff's rights" and "mere knowledge of such a deprivation does not suffice." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (citation omitted). Corporal has not alleged that Frosh acted, beyond "mere knowledge," to deprive Corporal of any rights. Because Frosh is not a prison official, he also cannot establish or eliminate prison policy, nor can he train or supervise prison staff at WCI. For these reasons, Corporal has failed to state a claim against Attorney General Frosh, and the Court will dismiss all claims against him.

## IV. Corporal's Motions

Because the Court finds that Corporal's claims will be dismissed for failure to exhaust administrative remedies and as barred by collateral estoppel, Corporal's Motion for Summary Judgment will necessarily be denied as moot.

As for Corporal's Motion for a Preliminary Injunction, a party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) that a preliminary injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). All four elements must be established. *Pashby v. Delia*, 709 F.3d 307, 320-321 (4th Cir. 2013). Because

the Court will dismiss Corporal's claims, he necessarily cannot establish the first element, a likelihood of success on the merits. Accordingly, the Motion for a Preliminary Injunction will be denied.

**CONCLUSION**

For the foregoing reasons, the Correctional Defendants' Motion to Dismiss the Amended Complaint or, in the Alternative, for Summary Judgment will be GRANTED, all claims against Defendant Attorney General Frosh will be dismissed, the Amended Complaint will be dismissed, Corporal's Motion for a Preliminary Injunction will be DENIED, and Corporal's Motion for Summary Judgment will be DENIED AS MOOT. A separate Order shall issue.

Date: January 28, 2022

THEODORE D. CHUANG
United States District Judge